(April 10, 2003)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ARTHUR BLACK, Appellant. [757 NYS2d 635] —Peters, J. Appeal from a judgment of the County Court of Schenectady County (Sise, J.), rendered July 1, 1997, upon a verdict convicting defendant of the crimes of rape in the first degree (two counts),

sodomy in the first degree, sexual abuse in the first degree (two counts), assault in the second degree and assault in the third degree.

Defendant and the victim had a child together during a rancorous relationship which was punctuated by repeated incidents of physical abuse. Less than six months after she ended the relationship, another incident of physical violence occurred; she did not report this incident to the police. The next day, the victim encountered defendant at a nightclub and was again subjected to physical abuse. In the early morning hours of the following day—September 29, 1996—defendant appeared at the victim's residence. According to the victim, after she permitted him entry, he immediately became violent toward her, hitting her in the jaw, choking her and punching her in the kidney. Despite her cries and protestations, he thereafter engaged in forcible sexual intercourse and sodomy. Defendant dressed and left; the victim did not report this incident to the police.

One week later—October 5, 1996—the victim and a friend returned to the nightclub. She was again harassed by defendant, but could not, at trial, recount whether he had hit her on that occasion. In the early morning hours of the following day—October 6, 1996—defendant once again arrived at her home and, this time, rang the doorbell continuously. Afraid that he would "kick the door down or something," the victim permitted him entry; he immediately became violent. This time, he kicked her in the back, choked her, hit her, and dragged her upstairs, threatening to kill her. She made several unsuccessful attempts to leave the premises. After one such occasion, he dragged her up the stairs by her arm and allegedly choked her until she was "foaming at the mouth * * * [and] couldn't breathe." After another unsuccessful attempt, she changed her approach in an effort to "calm him down." This time, she feigned affection by telling him that she "loved him," thereafter accompanying him to the bedroom where they engaged in sexual intercourse and sodomy. After defendant fell asleep and she moved to sleep on the couch for a few hours, she called a friend to take her to the local police station.

Defendant was arrested and the victim was taken to the hospital. At the emergency room, she was evaluated and treated by Steven Sung. Despite an internal exam, which included a rape kit and a full body exam, no physical findings, other than an abrasion to the right knee, were detected. The victim complained of pain in her shoulder and her physical inability to raise her arm; an X ray failed to show a fracture or

dislocation. Sung prescribed a sling and Motrin. According to the victim, her shoulder pain continued for approximately two weeks, pain which impinged her ability, during such time, to work as a hairdresser.

Defendant was indicted for the crime of rape in the first degree in connection with the September 1996 incident and the crimes of rape in the first degree, sodomy in the first degree, sexual abuse in the first degree (two counts) and assault in both the second and third degrees arising out of the October 1996 incident. Following a jury trial, he was convicted of all charges and was sentenced to an aggregate of 15 years in prison.* Defendant appeals.

First addressing defendant's challenge to the sufficiency of the evidence and his assertion that the verdict was against the weight of the credible evidence, we find that the proof, when viewed in the light most favorable to the prosecution (*see People v Contes*, 60 NY2d 620 [1983]), was legally sufficient to establish all of the elements of the crimes for which defendant was convicted. Mindful that a different finding would not have been unreasonable, we have also " 'weigh[ed] the relative probative force of conflicting testimony and the relative strength of conflicting' inferences that may be drawn from the testimony' " (*People v Bleakley*, 69 NY2d 490, 495 [1987], quoting *People ex rel. MacCracken v Miller*, 291 NY 55, 62 [1943]). According significant deference to the jury's " 'opportunity to view the witnesses, hear the testimony and observe [the] demeanor' of individuals who appear before it" (*People v Zabala*, 290 AD2d 578, 579 [2002], *lv denied* 97 NY2d 735 [2002], quoting *People v Bleakley, supra* at 495), we cannot conclude that the jury failed to accord appropriate weight to the evidence before it.

Defendant contends that the inconsistencies in the victim's description of the crimes, combined with the lack of objective medical evidence, renders her testimony incredible as a matter of law (*see People v Alford*, 287 AD2d 884, 887 [2001], *lv denied* 97 NY2d 750 [2002]; *People v Smith*, 272 AD2d 713, 715 [2000], *lv denied* 95 NY2d 871 [2000]). Certainly, the fact that Sung observed no physical evidence which would be consistent with the victim's description of the brutal beatings she received created a question of credibility. Such question and its attendant resolution, however, fall squarely within the province of the

---

* County Court sentenced him, as a second felony offender, to determinate sentences of 15 years upon each of his rape and sodomy convictions, determinate sentences of seven years upon the sexual abuse and second degree assault convictions and a definite sentence of one year upon his third degree assault conviction. The sentences were to run concurrently.

jury (*see People v Bateman*, 241 AD2d 770, 771, *lv denied* 91 NY2d 869 [1997]). With its resolution supported by the record, we decline further review.

Next, defendant challenges the rape convictions by contending that forcible compulsion was not proven. By the express terms of Penal Law § 130.00 (8), forcible compulsion can be established by physical force or a threat which places a person in fear of immediate death or physical injury. The victim's testimony clearly detailed that she was subjected to both. Recognizing that "[a] court's inquiry is 'not what the defendant would or could have done, "but rather what the victim, observing [the defendant's] conduct, feared [he] would or might do if [the victim] did not comply with [his] demands" ' " (*People v Jenkins*, 282 AD2d 926, 928 [2001], *lv denied* 96 NY2d 903 [2001], quoting *People v Thompson*, 72 NY2d 410, 415-416 [1988], quoting *People v Coleman*, 42 NY2d 500, 505 [1977]), we again find no error. Moreover, evidence concerning defendant's prior abusive behavior toward the victim was certainly relevant to this determination (*see People v Cook*, 93 NY2d 840, 841 [1999]; *People v Sturdivant*, 277 AD2d 607, 608 [2000], *lv denied* 95 NY2d 970 [2000]; *People v Brown*, 261 AD2d 410, 411 [1999], *lv denied* 93 NY2d 967 [1999]).

While proof of a physical injury is clearly not required to sustain the rape convictions, it was relevant to establish the assault findings (*see* Penal Law § 120.00 [1]; § 120.05 [6]). With physical injury defined as "impairment of physical condition or substantial pain" (Penal Law § 10.00 [9]), we note that testimony was presented concerning the duration of the victim's pain, the medical treatment sought and the prescribed course. Moreover, she wore a sling on her arm for almost two weeks and was unable to lift her arm high above her head during such time. Hence, despite the lack of testimony detailing the degree of pain associated with the shoulder injury, we find the proffered evidence to be sufficient to sustain the conviction (*see Matter of Veronica R.*, 268 AD2d 287 [2000]; *People v Usman*, 181 AD2d 628 [1992], *lv denied* 79 NY2d 1055 [1992]).

Having reviewed and rejected the remaining issues raised by defendant, including his assertion that the sentence imposed by County Court was harsh or excessive, we affirm.

Cardona, P.J., Spain, Carpinello and Lahtinen, JJ., concur. Ordered that the judgment is affirmed.