■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DAREL J. RIVERS, Appellant. [793 NYS2d 627]—

Lahtinen, J. Appeal from a judgment of the County Court of Schenectady County (Eidens, J.), rendered March 3, 2004, upon a verdict convicting defendant of the crimes of assault in the first degree, criminal possession of a weapon in the third degree, criminal possession of a weapon in the second degree, criminal use of a firearm in the first degree and attempted murder in the second degree.

An argument on the morning of March 17, 2003 between defendant and the victim, who resided in separate apartments of a two-family house in the City of Schenectady, Schenectady County, culminated in defendant shooting the victim in the left eye with a .22 caliber handgun. Although the victim survived the shooting, he lost his left eye and suffers from other maladies related to the shooting. Defendant fled the scene but was apprehended several days later and was eventually charged with various crimes in a multicount indictment. Following a jury trial, he was convicted of assault in the first degree, criminal possession of a weapon in the third degree, criminal possession of a weapon in the second degree, criminal use of a firearm in the first degree and attempted murder in the second degree. He was sentenced to concurrent terms of incarceration, the longest of which was 25 years. Defendant appeals.

Defendant initially argues that there was not legally sufficient evidence of the element of intent with regard to the convictions for attempted murder in the second degree and assault in the first degree. When reviewing a challenge to legal sufficiency, we view the evidence in the light most favorable to the prosecution (*see People v Taylor*, 94 NY2d 910, 911 [2000]; *People v Griffin*, 300 AD2d 743, 743 [2002], *lv denied* 99 NY2d 614 [2003]). There was evidence of an ongoing dispute between defendant and the victim. The victim testified that on the morning of the incident, he heard defendant yelling and, as he entered the common area of the building to leave for work, defendant suddenly appeared and swung his fist at him, grazing the victim's face. They had words and defendant again attempted to punch the victim. The victim testified that he swung back at defendant. He then heard

a gun and knew instantly he had been shot. The victim's son, who was a witness to the incident, related essentially the same facts. Intent may be inferred from a defendant's conduct (*see People v Abera*, 2 AD3d 1155, 1156 [2003], *lv denied* 1 NY3d 624 [2004]; *People v Hogencamp*, 300 AD2d 734, 735 [2002]; *People v Rumaner*, 45 AD2d 290, 292 [1974]). The evidence of ongoing problems, defendant approaching the victim with a secreted gun, instigating an encounter by attempting to punch the victim and then shooting the victim in the face when he retaliated provide sufficient proof from which to infer an intent to cause serious physical injury as well as an intent to cause death.

Nor are we persuaded by defendant's argument that the verdict was against the weight of the evidence. "In deciding this issue, we analyze the evidence based on the relative probative force of the conflicting testimony and the strength of the conflicting inferences that may be drawn therefrom, viewing the evidence in a neutral light and giving appropriate deference to the jury's ability to observe the witnesses and hear their testimony" (*People v Miller*, 13 AD3d 890, 891 [2004] [citations omitted]). There was conflicting evidence in that, among other things, defendant testified at trial that the victim was the aggressor, that he believed the victim was attempting to kill him and that he shot in self-defense. The jury, however, found veracity in the victim's account and credited the evidence supporting defendant's criminal culpability. Upon weighing the evidence, we find no reason to disregard this determination (*see People v Allen*, 13 AD3d 892, 894 [2004]).

Defendant next contends that County Court erred with regard to its *Sandoval* and *Molineux* rulings. As to *Sandoval*, the prosecutor sought to introduce a host of prior convictions and bad acts in the event that defendant testified. Determining which of these matters would be permitted and the extent of the inquiry "rests largely within the reviewable discretion of the trial court, to be exercised in light of the facts and circumstances of the particular case before it" (*People v Hayes*, 97 NY2d 203, 207 [2002]). Here, the trial court, among other things, prohibited impeachment as to defendant's prior acts of domestic violence against his girlfriend, allowed questioning only about the existence (but not the facts) of a theft conviction and an assault conviction (which arose from striking a child and struggling with police), and permitted questioning about the facts of a South Carolina assault conviction. When the prosecution questioned defendant about the South Carolina conviction, County Court interjected a detailed instruction to the jury with respect to the limited purpose of that proof. Under these cir-

cumstances, we are not persuaded that reversible error occurred.

The People were also permitted to present evidence about a variety of problems between defendant's household and the victim's family. This evidence included, among other things, the testimony of the victim's wife that defendant threatened her, defendant threatened to blow up the house, and she had called the police regarding several situations, such as defendant playing loud music through the night. County Court ruled that this evidence was relevant to defendant's motive and intent, and the probative value outweighed the potential for prejudice. We find no error in this ruling (*see generally People v Higgins*, 12 AD3d 775, 777-778 [2004], *lv denied* 4 NY3d 764 [2005]; *People v Laviolette*, 307 AD2d 541, 542-543 [2003], *lv denied* 100 NY2d 643 [2003]).

Defendant further argues that his conviction should be reversed because the People failed to turn over a 911 tape in compliance with the time frame set in a voluntary disclosure statement. The tape, however, was provided before trial, defendant did not request an adjournment based upon the late disclosure, defendant failed to establish prejudice and there was no showing of bad faith by the prosecution. Defendant's assertion that with more time he might have hired an expert to establish that a voice in the background was not his is undermined by his acknowledgment at trial that his and the victim's voices were recorded in the 911 call. We also note that the prosecutor stated that he had obtained the tape recording only shortly before he produced it. While the People's delay in producing the tape is not a procedure to be condoned, reversal is not warranted under these circumstances (*see People v Colavito*, 87 NY2d 423, 428-429 [1996]; *People v Civitello*, 287 AD2d 784, 785 [2001], *lv denied* 97 NY2d 703 [2002]; *People v Williams*, 243 AD2d 833, 836-837 [1997], *lv denied* 91 NY2d 931 [1998]).

Finally, in light of the violent nature of the crimes and defendant's less than laudable record, we find no merit to his contention that the sentence was harsh.

Mercure, J.P., Peters, Rose and Kane, JJ., concur. Ordered that the judgment is affirmed.