■ The People of the State of New York, Respondent, v Clifford Lee Smith, Appellant. [811 NYS2d 488]—

Spain, J. Appeal from a judgment of the County Court of Albany County (Breslin, J.), rendered October 8, 2003, upon a verdict convicting defendant of the crimes of rape in the first degree, burglary in the first degree and assault in the second degree.

Defendant was convicted, following a jury trial, of rape and burglary in the first degree and assault in the second degree. The jury's verdict followed testimony from the victim that after 10:00 P.M. on the night of October 4, 2002, defendant—a stranger—engaged her in conversation on a public bus and then followed her, at a distance, when she got off the bus in the City of Albany. He entered her apartment building behind her without permission, and forced himself into her sixth floor unit. He then twice forcibly subjected her to sexual intercourse, muffling her screams by covering her mouth with a blanket, and repeatedly overpowered her during struggles when she attempted to leave. During one of the victim's attempts to escape amidst the

protracted ordeal, her head was slammed against the door, causing a contusion. Defendant finally allowed her to leave to get food at 7:00 A.M., after extricating a promise that she would not tell anyone; she immediately reported the assault to a friend on the first floor and then called the police, who apprehended defendant fleeing from the building's side entrance. Albany police detectives testified that, during questioning, defendant admitted to following the victim home, going into her unit and locking the door behind him, pushing her when she tried to unlock it which caused her to bump her head, and having sexual intercourse which "[s]he didn't want." Defendant's pretrial motion to suppress his signed statement to police was denied, and it was admitted at trial.

Defendant also testified, claiming that he had been in a longterm relationship with the victim, that—on the night in question—she had invited him into her apartment after a night of partying and they had consensual sexual relations. He claimed that his statements to police had been coerced and the victim had fabricated these allegations out of anger because he was seeing other women. Upon his convictions, defendant was sentenced as a second felony offender to concurrent prison terms of 25 years for the rape and burglary conviction, and to a consecutive seven-year prison term for the assault conviction, with five years of postrelease supervision. Defendant now appeals.

Foremost, defendant's challenges to the verdict as against the weight of the evidence and not supported by legally sufficient evidence do not withstand scrutiny. To begin, defendant's general motions to dismiss at the close of proof did not preserve his challenges to the sufficiency of the evidence (*see People v Gray*, 86 NY2d 10, 19-21 [1995]; *see also People v Finger*, 95 NY2d 894, 895 [2000]). In any event, viewed in the light most favorable to the People, the victim's testimony, combined with defendant's oral and written admissions to the detectives, and the detectives' account, provided legally sufficient evidence that defendant subjected the victim to nonconsensual sexual intercourse using forcible compulsion (*see* Penal Law § 130.00 [8]; § 130.35 [1]; *see also People v Bleakley*, 69 NY2d 490, 495 [1987]; *People v Contes*, 60 NY2d 620, 621 [1983]; *People v Plaisted*, 2 AD3d 906, 907 [2003], *lv denied* 2 NY3d 744 [2004]).

The foregoing testimony, combined with the testimony of the sexual assault nurse who examined the victim at the hospital, also provided a valid line of reasoning and permissible inferences to support the jury's verdict on the burglary and assault counts (*see People v Bleakley, supra*; *People v Contes, supra*). The proof established that defendant had knowingly entered (or

remained unlawfully in) the victim's dwelling with the intent to commit a crime therein and had intentionally caused physical injury to her, using a dangerous instrument (the door) (*see* Penal Law § 120.05 [2]; § 140.30 [2]). The victim testified that after glancing back and seeing defendant following her, she entered her apartment building using a swipe card through the handicap entrance door, which was slow to close, took an elevator to her floor (her floor number was visible above the first floor elevator), unlocked the door to her unit and went down the hall to use the communal bathroom. When she reentered her unit and attempted to close the door behind her, defendant stood in her doorway preventing her from closing it and he asked to use the phone; in fear, she acceded to his request and then asked him to leave. When she refused his advances and pushed him away, defendant locked the door and forced her onto the floor, beginning the protracted assault. The unlawful circumstances of defendant's entry and his intent in doing so and in assaulting the victim were supported by legally sufficient evidence (*see People v Johnson*, 20 AD3d 808, 810-811 [2005], *lv denied* 3 NY3d 853 [2005]; *People v Jennings*, 20 AD3d 777, 777-778 [2005], *lv denied* 5 NY3d 829 [2005]).

To the extent that defendant challenges the jury's verdict as contrary to the weight of the evidence, we are unpersuaded, having weighed the relative probative force of the conflicting testimony and the relative strength of the conflicting inferences to be drawn from the testimony (*see People v Bleakley, supra* at 495). The sharply divergent testimony of the victim and defendant required the jury to make credibility determinations, and "we accord great deference to the jury's conclusions regarding the credibility of witnesses and the weight to be given their testimony" (*People v Newell*, 290 AD2d 652, 654 [2002], *lv denied* 98 NY2d 712 [2002]; *see People v Black*, 304 AD2d 905, 907 [2003], *lv denied* 100 NY2d 578 [2003]). The jury rationally credited the victim's believable account, which defendant's own admissions to police mirrored, over defendant's contrary testimony. Indeed, the jury had good reason to completely discredit defendant's testimony, given his many contradictory irreconcilable versions of what occurred, the lack of a scintilla of proof to support his claims of a preexisting relationship, and the implausible quality of his testimony. Thus, we find that the evidence fully supported the jury's verdict.

Next, we reject as meritless defendant's claim that he was deprived of the effective assistance of trial counsel (*see People v Flores*, 84 NY2d 184, 187 [1994]). Defendant's contentions focus on counsel's failure to produce evidence to corroborate his ver-

sion of events, claims which are speculative due to the absence of any support in the record that such evidence exists (*see People v Aiken*, 45 NY2d 394, 400 [1978]). Moreover, as County Court noted, viewed in totality, the record reflects that defendant received vigorous, meaningful representation at all phases of this prosecution, including pursuit of a reasonable trial strategy, and detailed cross-examination of the People's witnesses (*see People v Baldi*, 54 NY2d 137, 147 [1981]; *see also People v Henry*, 95 NY2d 563, 565-566 [2000]; *People v Benevento*, 91 NY2d 708, 712 [1998]).

Similarly unavailing are defendant's contentions that he was deprived of a fair trial due to prosecutorial remarks during summation (*see People v Tarantola*, 178 AD2d 768, 770 [1991], *lv denied* 79 NY2d 954 [1992]). The prosecutor's remarks regarding defendant being simple and to his claimed mental limitations were fair response to the theory of the defense and its summation (*see People v Greene*, 13 AD3d 991, 993 [2004], *lv denied* 5 NY3d 789 [2005]). The prosecutor's emphasis on defendant's lack of truthfulness related to the many inconsistent accounts of this incident, and was responsive to the central issue in this case—noted in the defense summation—of who was being truthful. When the prosecutor's arguments pointed to weaknesses in the defense theory and the defense's failure to elicit testimony on cross-examination of the People's witnesses, County Court promptly instructed the jury that defendant bore no burden of proof and had no duty to elicit testimony (*see People v Robinson*, 16 AD3d 768, 770 [2005], *lv denied* 4 NY3d 856 [2005]). Defendant did not object to the prosecutor's remark that he knew it was defendant's semen in the condoms found on the floor of the victim's apartment; moreover, it did not cause substantial prejudice to defendant despite the absence of DNA tests on that evidence, where defendant testified that he had used these condoms during this admitted sexual episode, leaving only the issue of whether it was consensual or forced. Defendant's remaining claims are either unpreserved or his objections were sustained, and none reflects a flagrant or pervasive pattern of prosecutorial misconduct (*see People v McCombs*, 18 AD3d 888, 890 [2005]).

Finally, although defendant received maximum consecutive sentences as a second felony offender, we are unable to discern any of the type of extraordinary circumstances or abuse of discretion by the sentencing court which would justify modifying the sentence in the interest of justice (*see People v Johnson*, 20 AD3d 808, 813 [2005], *supra*). County Court considered defendant's young age (21) and mental limitations, which it

found did not impair his ability to discern right from wrong, but determined that the "heinous and egregious" nature of these violent offenses warranted the lengthy sentence imposed, a conclusion which we find unassailable. Indeed, defendant's efforts to intimidate and silence his victim prior to this trial undermine any argument for leniency. Defendant's remaining claims are similarly devoid of any merit.

Mercure, J.P., Carpinello, Rose and Kane, JJ., concur. Ordered that the judgment is affirmed.