■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOEL SCOTT, Appellant. [849 NYS2d 335]—

Rose, J. Appeal from a judgment of the County Court of Albany County (Breslin, J.), rendered March 14, 2005, upon a verdict convicting defendant of two counts of the crime of murder in the first degree.

Early one morning while separately walking their dogs in a city park, two eyewitnesses reported having seen a large African-American male, who was wearing a blue shirt and naked from the waist down, punching a person who was laying beneath him and moving his body as though he were engaging in sexual intercourse. Arriving at the scene, police officers observed defendant, who was wearing a blue shirt, jump up from a prone position and flee while trying to pull up his pants, which had been down around his ankles. After the officers caught defendant, they returned to where they first saw him and found the body of the female victim naked from the waist down, beaten and covered with blood. Thereafter, defendant made incriminating statements to the police. Following a jury trial on the resulting charges of murder, attempted rape and attempted sexual abuse, defendant was convicted of two counts of murder in the first degree. County Court later sentenced defendant, as a second felony offender, to life in prison without the possibility of parole.

Defendant now appeals, contending initially that his convictions are against the weight of the evidence. This standard requires us to view the evidence in a neutral light and " ' "weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" ' " (*People v Romero*, 7 NY3d 633, 643 [2006], quoting *People v Bleakley*, 69 NY2d 490, 495 [1987] [citation omitted]). Also, " 'we accord great deference to the jury's conclusions regarding the credibility of witnesses and the weight to be given their testimony' " (*People v Smith*, 27 AD3d 894, 897 [2006], *lv denied* 6 NY3d 898 [2006], quoting *People v Newell*, 290 AD2d 652, 654 [2002], *lv denied* 98 NY2d 712 [2002]).

Here, in order to prove defendant guilty of the two counts of murder in the first degree, the People were required to show

that he, with the intent to cause the death of another person, caused the death of such person while committing attempted rape in the first degree and attempted sexual abuse in the first degree (*see* Penal Law § 125.27 [1] [a] [vii]). At trial, the eyewitnesses testified as to what they had seen, but were unable to positively identify defendant as the person they had observed. For their part, the officers described what they had observed and related statements made by defendant at the scene, which showed that he knew the gender of the victim without being told, denied raping her without being questioned, admitted to having paid her for fellatio and acknowledged that he was "going away for life." The officer who interrogated defendant at the police station testified that defendant asked him if the victim were dead and, after the officer said he did not think so, defendant said, "I murdered before. I told myself I would never murder again." Forensic evidence showed that the victim had died as the result of exceptionally violent, blunt-force trauma to her head and strangulation, that the blood found on defendant was the victim's, and that DNA of both the victim and defendant were present in specimens recovered from defendant's underwear and the victim's pubic area.

Testifying in his own defense, defendant offered an explanation for being at the scene and covered with the victim's blood, saying that he had defended her against two unknown male assailants and came in contact with her blood when he slipped and fell during the scuffle. He also denied making the oral statements related by the officers. Given the variety of evidence connecting defendant to the scene and the victim's murder, his alternate account of what had occurred presented credibility issues that the jury reasonably resolved against him (*see People v Griffin*, 26 AD3d 594, 596 [2006], *lv denied* 7 NY3d 756 [2006]; *People v Haight*, 19 AD3d 714, 716 [2005], *lv denied* 5 NY3d 806 [2005]). Thus, the finding that defendant was the victim's assailant is not against the weight of the evidence.

Next, defendant claims that he was shown to be unable to form the requisite criminal intent to cause the victim's death due to intoxication. " 'Whether an individual's level of intoxication negates the element of intent to commit a crime lies within the domain of the jury as the trier of fact' " (*People v Hazen*, 20 AD3d 586, 588 [2005], *lv denied* 5 NY3d 806 [2005], quoting *People v Keller*, 246 AD2d 828, 829 [1998], *lv denied* 91 NY2d 1009 [1998]; *see People v Clark*, 241 AD2d 710, 711 [1997], *lv denied* 90 NY2d 1010 [1997]). While defendant's appearance at the crime scene and testimony at trial are some evidence of intoxication, other evidence established that he was aware of

his intentions and able to provide a detailed account of the events following his arrest. Also, on cross-examination, defendant admitted being aware of what was happening at the park on the morning in question. Moreover, one of the arresting officers opined that if defendant were intoxicated, it did not seriously impair him. Under these circumstances, we cannot say that the jury improperly weighed the evidence in deciding in the People's favor the extent of defendant's intoxication (*see People v Stewart*, 296 AD2d 587, 588 [2002]).

In addition, the eyewitness testimony describing the repeated punching of the victim, the forensic evidence as to the cause of the victim's death, and other evidence that defendant was a trained, successful professional boxer provided an ample basis for the jury's conclusion that his conscious objective was to kill the victim (*see People v Hawthorne*, 35 AD3d 499, 501-502 [2006], *lv denied* 8 NY3d 946 [2007]; *People v Rivers*, 17 AD3d 934, 936 [2005], *lv denied* 5 NY3d 768 [2005]; *People v Wallace*, 217 AD2d 918, 918-919 [1995], *lv denied* 86 NY2d 847 [1995]).

Also, the evidence supports the jury's conclusion that defendant killed the victim in the course and in furtherance of an attempted rape and attempted sexual abuse. The evidence established that defendant had punched and restrained the victim into submission, that her pants were completely ripped open, and that he had moved his body back and forth on top of her, as if having sex. This, together with the presence of the victim's blood and his semen on his underwear, provided a basis for the jury to find that he had "engage[d] in conduct which tend[ed] to effect the commission" of rape and sexual abuse by the use of force (Penal Law § 110.00; *see* Penal Law § 130.00 [8]; § 130.35 [1]; § 130.65 [1]; *People v Haims*, 171 AD2d 878, 879 [1991], *lv denied* 78 NY2d 966 [1991]; *People v Simmons*, 170 AD2d 15, 20-21 [1991], *lv denied* 78 NY2d 1130 [1991]). Accordingly, "[d]efendant's intent to rape [and sexually assault the victim] could reasonably be inferred by the jury from defendant's conduct and the surrounding circumstances" (*People v Pereau*, 99 AD2d 591, 592 [1984], *affd* 64 NY2d 1055 [1985]).

Defendant next contends that his oral statements to the arresting officers should have been suppressed as the product of custodial interrogation before he was advised of his *Miranda* rights, and that his later oral and written statements should have been suppressed because, due to his intoxication, he could not have voluntarily waived his rights. The record, however, supports County Court's findings that defendant's initial statements were spontaneous and not the result of " ' "express questioning or its functional equivalent" ' " (*People v Harris*, 57

NY2d 335, 342 [1982], *cert denied* 460 US 1047 [1983], quoting *People v Stoesser*, 53 NY2d 648, 650 [1981]; *see People v Starks*, 37 AD3d 863, 864-865 [2007]). The voluntariness of defendant's later statements turns upon his intoxication and we note that "[o]nly when the degree of inebriation has risen to the level of mania or to the level where the defendant is unable to comprehend the meaning of his or her words is the statement suppressible" (*People v Williams*, 40 AD3d 1364, 1365 [2007], *lv denied* 9 NY3d 927 [2007]; *see People v Dobranski*, 112 AD2d 541, 541 [1985], *lv denied* 66 NY2d 614 [1985]). At the *Huntley* hearing, the police officers testified that despite some signs of intoxication, defendant never appeared confused, disoriented or unsure about what was occurring. Also, defendant did not testify at the hearing, and it is well settled that testimony which is subsequently elicited at trial cannot be considered in reviewing a suppression ruling (*see People v Wilkins*, 65 NY2d 172, 180 [1985]; *People v Rosa*, 30 AD3d 905, 907 [2006], *lv denied* 7 NY3d 851 [2006]). Deferring to County Court's credibility assessments (*see People v Davis*, 18 AD3d 1016, 1017 [2005], *lv denied* 5 NY3d 805 [2005]), we find that the record supports the court's conclusion that defendant's statements were voluntary.

Defendant also challenges County Court's ruling permitting the People to inquire on cross-examination about statements he made to a newspaper reporter denying involvement in a prior hit-and-run automobile accident that severely injured a four-year-old boy. "The decision whether to allow disclosure of prior criminal, vicious or immoral acts for the purpose of impeachment and credibility must be balanced against the potential prejudice to defendant" (*People v Williams*, 256 AD2d 661, 662 [1998], *lv denied* 93 NY2d 981 [1999] [citation omitted]). Since other, separately admitted evidence established that defendant had pleaded guilty to leaving the scene of an accident as a result of that incident in 1996, admission of his statements bore logically on his "truthfulness, honesty or desire to deliberately further his . . . self-interest at the expense of society" without revealing any new prejudicial information (*People v Quiller*, 298 AD2d 712, 713 [2002], *lv denied* 99 NY2d 618 [2003]; *see People v Rivera*, 101 AD2d 981, 982 [1984], *affd* 65 NY2d 661 [1985]). Thus, their admission was not error.

We also are unpersuaded by defendant's claim that County Court committed reversible error in admitting his certified professional boxing records into evidence and allowing the People to question him about being a boxer. County Court found these records, which included 19 wins by knockout, relevant to whether defendant possessed the ability to kill a person with his

fists, his awareness of such lethal capacity and the intent inferable from repeatedly punching the 59-year-old victim. Further, they tended to discredit defendant's account that while fending off the victim's assailants, he repeatedly fell and they escaped apparently without injury. Since County Court properly weighed the probative value of this evidence against its potential prejudicial effect (*see People v Scarola*, 71 NY2d 769, 777 [1988]), we find no error.

Finally, we have considered defendant's remaining arguments, including the claim that his sentence is harsh and excessive, and find them to be without merit.

Cardona, P.J., Peters, Spain and Kane, JJ., concur. Ordered that the judgment is affirmed.