Garry, J.
Appeal from a judgment of the County Court of Broome County (Smith, J), rendered January 8, 2010, upon a verdict convicting defendant of the crimes of predatory sexual assault (three counts), attempted rape in the first degree (three counts), criminal possession of a weapon in the third degree and grand larceny in the fourth degree.
In March 2008, defendant invited victim A to his apartment. Victim A later testified that when she arrived, he prevented her from leaving, forced her to participate in sexual acts and told her that he would kill her if she told anyone what had happened. In June 2008, victim B went to defendant’s apartment, purportedly to help him move furniture. She testified that he forced her to perform oral sex, attempted to have intercourse with her and threatened to kill her. After victim B alerted police, defendant was indicted for various crimes arising from the June 2008 incident. Thereafter, victim A reported the March 2008 events, and a superceding indictment was handed up incorporating the original indictment as well as additional crimes pertaining to victim A. Following a jury trial, defendant was convicted of predatory sexual assault (three counts), and attempted rape in the first degree (three counts), criminal possession of a weapon in the first degree and grand larceny in the fourth degree. County Court sentenced defendant as a second felony offender to an aggregate prison term of 50 years to life. Defendant appeals, and we affirm.
We are unpersuaded by defendant’s contention that he was deprived of his right to be present during sidebar interviews with prospective jurors (see People v Antommarchi, 80 NY2d 247, 250 [1992]). At the beginning of jury selection, County Court invited prospective jurors and counsel to the bench to discuss general excuses. As this initial proceeding did not address potential bias “or otherwise present the potential for [defendant’s] meaningful participation,” his presence was not required (People v Fabricio, 3 NY3d 402, 406 [2004]; accord *1158 People v Hampton, 64 AD3d 872, 875 [2009], lv denied 13 NY3d 796 [2009]). Nonetheless, the court advised defendant, “[Y]ou can approach or you can stay there, it’s up to you” and then, in apparent response to a nonverbal signal from defendant or his counsel, stated, “He’s waiving his presence, no problem.” A second sidebar conference, with jurors who said their lives had been affected by sexual assault, did present the issue of their potential bias, and thus defendant had a fundamental right to participate (see People v Antommarchi, 80 NY2d at 250). Before conducting these interviews, the court again invited counsel and defendant to approach and again apparently confirmed defendant’s nonverbal response, stating, “You’re waiving, not a problem. He waives.” Thereafter, defendant exercised his right to participate in the further sidebar juror interviews.
We agree that “the better practice would have been to state the substance of the right being waived” and obtain more explicit confirmation of defendant’s waiver (People v Velasquez, 1 NY3d 44, 49 [2003]). However, County Court’s initial invitation to defendant to participate in the discussion of general excuses, although “broader than the law requires, . . . necessarily included the rights guaranteed by Antommarchi” (People v Williams, 15 NY3d 739, 740 [2010]). Neither defendant nor his counsel objected when the court stated on the record that defendant was waiving his right to participate in the second sidebar conference, and nothing in the record calls into doubt the voluntary, intelligent and knowing character of this waiver (see People v Keen, 94 NY2d 533, 538-539 [2000]; People v Roberts, 80 AD3d 787, 790 [2011], lv denied 16 NY3d 862 [2011]). Accordingly, defendant did not meet his burden of demonstrating that he was wrongfully excluded (see People v Velasquez, 1 NY3d at 49-50; People v Hampton, 64 AD3d at 875; People v Jackson, 296 AD2d 658, 659 [2002], lv denied 98 NY2d 768 [2002]).
Defendant next contends that the verdict was not supported by the weight of the evidence. Where, as here, a different verdict would not have been unreasonable, this Court must view the evidence in a neutral light and, “like the trier of fact below, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony” (People v Romero, 7 NY3d 633, 643 [2006] [internal quotation marks and citations omitted]; see People v Kruppenbacher, 81 AD3d 1169, 1174 [2011], lv denied 17 NY3d 797 [2011]). Victim A testified that defendant invited her to his apartment, ostensibly to reimburse her for the cost of calls he had made to her cell phone. She stated that while two men who *1159 had given her a ride to the apartment waited in the car, defendant forced her into his bedroom, compelled her to perform various sexual acts and threatened to kill her, and that she eventually escaped by telling defendant that she would use the money he had given her for cell phone calls to purchase drugs for him. One of the men who drove victim A to the apartment testified that she was shaken up, trembling and scared when she emerged; the second man testified that victim A said that defendant had raped her and she was “tattered” and crying. The second man testified that he later asked defendant whether he had raped victim A, and defendant confirmed that he had.
Victim B testified that she had formerly been acquainted with defendant and had once filed harassment charges against him, but did not immediately recognize him upon encountering him in June 2008. She testified that when she entered defendant’s apartment, he locked the door, blocked it with a crate-like object, and told victim B that she was going to pay for the harassment charges, which had resulted in his incarceration and the revocation of his parole. He struck victim B, ripped her shirt, and dragged her into the bedroom, where he brandished a knife and ordered her to remove her clothes before forcing her to engage in sexual activities. Victim B testified that defendant took her cell phone, repeatedly threatened to kill her, and held a knife to her throat, causing a small cut on her neck. After several hours, she persuaded defendant to take her to the hospital by feigning illness and, upon reaching the emergency room, asked a nurse to call police.
Defendant testified, denying that he harmed either victim, claiming that any sexual contact they had was consensual, and asserting that the purpose of his encounters with them was to obtain and use drugs. On appeal, he contends that neither victim is credible, as both have histories of drug use, prostitution and criminal offenses involving dishonesty. However, these issues were fully explored during cross-examination and “raised credibility questions which were within the jury’s province to resolve” (People v Moore, 29 AD3d 1077, 1078 [2006] [internal quotation marks and citation omitted]; see People v Stearns, 72 AD3d 1214, 1216 [2010], lv denied 15 NY3d 778 [2010]). Moreover, other witnesses offered testimony that corroborated and supported substantial aspects of the victims’ accounts. As defendant argues, some parts of victim B’s testimony were undermined by telephone records. Nonetheless, the jury “was entitled to credit some of her testimony while discounting other aspects” (People v Kuykendall, 43 AD3d 493, 495 [2007], lv denied 9 NY3d 1007 [2007]; see People v Alteri, 49 AD3d 918, *1160 920 [2008]). According the appropriate deference to the jury’s credibility assessments, we find no reason to conclude that the evidence was not given the proper weight (see People v Littebrant, 55 AD3d 1151, 1155-1156 [2008], lv denied 12 NY3d 818 [2009]; People v Smith, 27 AD3d 894, 897 [2006], lv denied 6 NY3d 898 [2006]).
Rose, J.P., Malone Jr., Stein and Egan Jr., JJ., concur. Ordered that the judgment is affirmed.