People v Cummings (2018 NY Slip Op 00043)





People v Cummings


2018 NY Slip Op 00043


Decided on January 4, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: January 4, 2018

107295

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
ERVIN CUMMINGS, Appellant.

Calendar Date: November 16, 2017

Before: McCarthy, J.P., Lynch, Devine, Mulvey and Aarons, JJ.


Cheryl L. Sovern, Clifton Park, for appellant, and appellant pro se.
Andrew J. Wylie, District Attorney, Plattsburgh (Timothy G. Blatchley of counsel), for respondent.


Mulvey, J.

MEMORANDUM AND ORDER
Appeal from a judgment of the County Court of Clinton County (McGill, J.), rendered October 28, 2014, upon a verdict convicting defendant of the crime of criminal possession of a controlled substance in the third degree.
After members of the Adirondack Drug Task Force observed a controlled drug transaction between Tiffany Moore and a confidential informant in defendant's presence outside a residence, Moore drove away in a vehicle in which defendant was the front seat passenger. Within a short time, police conducted a traffic stop and a search of the vehicle disclosed a large quantity of heroin packaged in 112 envelopes under the front passenger seat. Defendant was thereafter charged by indictment
with criminal possession of a controlled substance in the third degree. Defendant's motion to suppress, among other things, his statements to police and the physical evidence was denied following a combined Huntley/Ingle hearing. After a jury trial, he was convicted as charged and sentenced, as a second felony offender, to a prison term of nine years followed by three years of postrelease supervision. Defendant now appeals.
We affirm. Initially, defendant argues that police lacked probable cause to stop the [*2]vehicle and that the drugs seized from under the passenger seat should have been suppressed [FN1]. County Court credited the testimony of Christopher Clarke, the police officer who stopped the vehicle, that he had observed defendant in the passenger seat of the moving vehicle without wearing the required seat belt, a traffic violation (see Vehicle and Traffic Law § 1229-c [3]). Observation of this traffic violation, which defendant conceded after the stop, provided the requisite probable cause to stop the vehicle, regardless of the "primary motivation" for the stop (People v Robinson, 97 NY2d 341, 349 [2001]; see People v Guthrie, 25 NY3d 130, 133 [2015]; People v Martin, ___ AD3d ___, ___, 2017 NY Slip Op 08555, *1 [2017]; People v Singleton, 135 AD3d 1165, 1168 [2016], lv denied 27 NY3d 969 [2016]). Alternately, the information imparted by task force officers to Clarke — that the driver had, moments earlier, been observed selling heroin in a controlled buy — also provided probable cause for the stop (see People v Jenkins, 90 AD3d 1326, 1327 [2011], lv denied 18 NY3d 958 [2012]; People v Douglas, 42 AD3d 756, 757-758 [2007], lv denied 9 NY3d 922 [2007]).
To the extent that defendant challenges the lawfulness of the ensuing search of the vehicle,[FN2] Clarke testified that, after the stop, defendant and Moore exited the vehicle and he spoke to them briefly; Clarke then returned to his vehicle to write the traffic ticket and check Moore's license and registration, when he observed defendant become "fidgety," reach into the pouch he carried at his waist, get back into the front passenger seat, lean over and then exit the vehicle. At that point, Clarke returned to the vehicle and, upon request, defendant consented to Clarke looking in the pouch, where he found a cut straw with resin of the type commonly used to ingest narcotics. Clarke then obtained Moore's consent to search the vehicle, which was [*3]registered to her husband, and the packages of heroin were found under the front passenger seat where defendant had been sitting. Defendant was arrested, some of the recorded buy money was found on his person and he later admitted to police that the heroin belonged to him. Under the circumstances, Clarke had a founded suspicion that defendant had secreted the heroin under the passenger seat, i.e., that criminal activity was afoot, and was authorized to request consent to search the vehicle (see People v Hayden, 155 AD3d 1309, 1310 [2017]; People v Whalen, 101 AD3d 1167, 1168 [2012], lv denied 20 NY3d 1105 [2013]). We accord great deference to the motion court's decision to credit Clarke's account and to its factual determination that defendant and Moore voluntarily consented to the searches, and we discern no basis upon which to disturb County Court's findings or denial of the motion to suppress the physical evidence (see People v Hayden, 155 AD3d at 1310).
Next, defendant contends that his statements to police during the traffic stop and at the police station should have been suppressed as involuntary because he was impaired by drugs. The police officers who had face-to-face interactions with defendant during the stop, arrest and questioning, whom County Court found credible, testified that defendant did not appear to be impaired or intoxicated, was not confused, did not request an attorney and was cooperative. Their testimony established that defendant received Miranda warnings shortly after his arrest, indicated that he understood them and agreed to speak with the officers. As County Court correctly observed, the video recording of the police interview of defendant at the station, in which he admitted that the heroin found in the vehicle belonged to him, while partially unintelligible, belies his claims that he was impaired or had difficulty understanding his rights. There was no convincing evidence that defendant was impaired "to the level of mania or to the level where [he was] unable to comprehend the meaning of his words so as to render his statement involuntary" (People v Whitted, 117 AD3d 1179, 1180-1181 [2014] [internal quotation marks, ellipses and citations omitted], lv denied 23 NY3d 1026 [2014]; see People v Scott, 47 AD3d 1016, 1020 [2008], lv denied 10 NY3d 870 [2008]). Accordingly, we find that the People proved beyond a reasonable doubt that defendant was advised of and knowingly waived his rights and that his statements were voluntary and, thus, his motion to suppress was properly denied (see People v Jin Cheng Lin, 26 NY3d 701, 719 [2016]; People v Steigler, 152 AD3d 1083, 1083-1084 [2017], lv denied 30 NY3d 983 [2017]).
We now turn to defendant's claims that errors occurred at trial. We are not persuaded by the contention raised in defendant's pro se brief that County Court erred in striking for cause prospective juror No. 10 [FN3]. "When a prospective juror's impartiality is in doubt, it is the court's obligation to make further inquiries and to excuse the juror if the doubt is not fully dispelled. Notably, if there is any doubt about a prospective juror's impartiality, the trial court should err on the side of excusing the juror, since at worst the court will have replaced one impartial juror with another" (People v Briskin, 125 AD3d 1113, 1117 [2015] [internal quotation marks, brackets and citations omitted], lv denied 25 NY3d 1069 [2015]). The record reflects that the prospective juror expressed concerns about the potential sentence that defendant faced and whether it would be fair or influenced by race, and indicated that she did not think that she could be impartial unless defendant testified. As the juror did not provide an "unequivocal assurance of impartiality," County Court properly granted the People's motion to strike her for cause pursuant to CPL 270.20 (1) (b) (id. at 1118; see People v Harris, 19 NY3d 679, 685 [2012]). Moreover, as the People did not, at any point, exhaust their peremptory challenges, reversible error did not [*4]occur (see CPL 270.20 [2]).
Next, defendant argues that County Court erred in permitting the People to refer to him by his street name, Mafia, and to elicit testimony using that name. These references occurred in the opening statements and during the testimony of the police officers involved in the ongoing drug investigations and the controlled buy; the officers knew defendant only by his street name from confidential sources and first learned his identity after he was arrested. As defendant's street name was relevant to his identity and he was known to and identified by witnesses by that name, we cannot conclude that the court abused its discretion in permitting its use during trial while striking any reference to it from the indictment, although the court should have instructed the jury that it could not consider his street name as any evidence of guilt of the crime charged (see People v Hoffler, 41 AD3d 891, 892-893 [2007], lvs denied 9 NY3d 962, 963 [2007]; see also People v Franqueira, 143 AD3d 1164, 1169 [2016]; People v Hernandez, 89 AD3d 1123, 1125-1126 [2011], lvs denied 20 NY3d 1099 [2013]). However, we agree with defendant that County Court should not have required him to publish for the jury his tattoo bearing, among other things, his street name because it had little probative value, particularly given the other testimony regarding the tattoo, and doing so was prejudicial (see People v Morgan, 24 AD3d 950, 952-954 [2005], lv denied 6 NY3d 815 [2006]; compare People v Miranda, 77 AD3d 1323, 1324 [2010], lv denied 16 NY3d 833 [2011]). In light of the overwhelming evidence of defendant's guilt, including his admission, there is not a significant probability that he would have been acquitted of this crime but for the display of his tattoo and, thus, any error was harmless (see People v Crimmins, 36 NY2d 230, 241-242 [1975]; People v Miranda, 77 AD3d at 1324).
Defendant also contends that County Court's remark regarding the content of the police dash cam video recording of the traffic stop played during trial was unduly prejudicial. During cross-examination of Clarke, defense counsel played a clip of the video, asking Clarke if he was able to make certain observations on the video regarding the movements of the vehicle occupants. When the People objected, the court engaged in an exchange with counsel, commenting that counsel was improperly "assuming that there was movement in the car, which, frankly, I don't see." While the court should not have expressed its opinion as to the contents of the video (see People v Byrd, 152 AD3d 984, 988 [2017]), the court repeatedly made clear that "[t]he video speaks for itself." Counsel was permitted to replay the portion of the video in issue and again question Clarke as to his observations. Accordingly, the remark did not deprive defendant of a fair trial or reflect bias against him (see id.; see also People v Arce-Santiago, 154 AD3d 1172, 1174 [2017]).
Further, we find no abuse of discretion in the denial of defendant's request for a continuance, on the last day of trial, to produce Moore as a witness (see People v Becoats, 17 NY3d 643, 651-652 [2011], cert denied 566 US 964 [2012]; People v Durham, 148 AD3d 1293, 1295 [2017], lv denied 29 NY3d 1091 [2017]). To that end, defendant did not make the requisite showing of materiality, among other things, as Moore's expected testimony reflected that it was not relevant to issues at trial and, instead, pertained to matters already resolved at the suppression hearings (see People v Booker, 141 AD3d 834, 835 [2016], lv denied 28 NY3d 1026 [2016]; compare People v Hartman, 64 AD3d 1002, 1005 [2009], lv denied 13 NY3d 860 [2009]). Likewise, we are unpersuaded that County Court erred in refusing to give a missing witness charge relative to the confidential informant who participated in the controlled buy (see People v Jackson, 151 AD3d 1466, 1469 [2017], lv denied 30 NY3d 950 [2017]). This testimony was cumulative to the police testimony regarding the controlled buy and, as the court correctly concluded, it was not relevant to the sole charge against defendant, which stemmed from the possession of drugs in the vehicle unrelated to the controlled buy (see id.; see also People v [*5]Edwards, 14 NY3d 733, 735 [2010]; People v Coleman, 151 AD3d 1385, 1388 [2017], lv denied 29 NY3d 1125 [2017]).
Finally, contrary to defendant's pro se contention, he was provided with notice of his 2012 drug-related predicate felony conviction in Monroe County, which he admitted at sentencing, and he did not object to the procedures followed or to being sentenced as a second felony offender. Thus, his current challenge to that sentencing is unpreserved (see People v Wynn, 149 AD3d 1252, 1256 [2017], lv denied 29 NY3d 1136 [2017]). In any event, he was properly sentenced as a second felony drug offender based upon his admission to that predicate conviction and the sentence was legal (see Penal Law §§ 70.06 [1] [a], [b]; 70.70 [1] [b]; [3] [b]; [i]; People v Manford, 125 AD3d 1047, 1048 [2015]). We have examined defendant remaining contentions, including those raised in his pro se submissions, and find that they do not have merit.
McCarthy, J.P., Lynch, Devine and Aarons, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: Defendant's pretrial motion papers specifically requested, in addition to a Huntley hearing challenging the admissibility of his statements to police, an Ingle hearing (see People v Ingle, 36 NY2d 413 [1975]), which is aimed at addressing the lawfulness of a police traffic stop of a vehicle (see People v Bushey, 29 NY3d 158, 161, 164 [2017]; People v Driscoll, 145 AD3d 1349, 1349-1350 [2016]). He did not request a Mapp hearing.

Footnote 2: Defendant did not expressly challenge, in his omnibus motion or suppression papers, the constitutionality of the search of the vehicle, although he argued that the search and seizure of property "from defendant" was unlawful (see n 1, infra). At the hearing, the vehicle search was the subject of questioning, but the People thereafter argued that defendant had not requested a hearing on the constitutionality of the search of the vehicle. County Court did not address this issue, other than to find that Moore had given permission for the search. Further, while the People asserted in a posthearing submission that defendant did not have automatic standing to challenge the search of the vehicle in that they were not relying solely on the automobile presumption to establish his knowing possession of the drugs (see Penal Law § 220.25 [1]), the court did not address this issue. Given that the record at the pretrial stage is not clear whether the People needed or intended to rely on the automobile presumption, or if possession would be predicated on ordinary constructive possession principles, we proceed on the assumption that defendant had standing.

Footnote 3: While defendant does not specifically identify the prospective juror in dispute, we agree with the People that defendant is referring to juror No. 10.