People v Ramsoondar (2022 NY Slip Op 03768)

People v Ramsoondar

2022 NY Slip Op 03768

Decided on June 9, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 9, 2022

111076
[*1]The People of the State of New York, Respondent,
v
Rohan Ramsoondar, Appellant.

Calendar Date:April 19, 2022

Before:Lynch, J.P., Clark, Aarons, Colangelo and McShan, JJ.

Rural Law Center of New York, Castleton (Kristin A. Bluvas of counsel), for appellant.
Amanda M. Nellis, Acting District Attorney, Johnstown (Katherine Ehrlich of counsel), for respondent.

Lynch, J.P.
Appeal from a judgment of the County Court of Fulton County (Hoye, J.), rendered February 9, 2018, upon a verdict convicting defendant of the crimes of criminal contempt in the first degree and aggravated family offense.
After going to the home that he shared with his then-girlfriend (hereinafter the victim) in violation of a stay-away order of protection, defendant was charged by indictment with criminal contempt in the first degree and aggravated family offense. Following a jury trial, defendant was convicted as charged and sentenced, as a second felony offender, to concurrent prison terms of 2 to 4 years. Defendant appeals.
Defendant contends that there was legally insufficient evidence that he acted with intent to violate the order of protection. This claim is unpreserved as defendant made only a generalized motion for a trial order of dismissal at the close of the People's case that was not directed at the element of intent (see People v Walker, 191 AD3d 1154, 1156 [2021], lv denied 37 NY3d 961 [2021]). Nevertheless, "in reviewing defendant's challenge to the weight of the evidence, 'we necessarily determine whether all of the elements of the charged crime were proven beyond a reasonable doubt'" (id., quoting People v Rudge, 185 AD3d 1214, 1214 [2020], lv denied 35 NY3d 1070 [2020]; accord People v Hajratalli, 200 AD3d 1332, 1333 [2021]).
As relevant here, a person is guilty of criminal contempt in the first degree when "he or she commits the crime of criminal contempt in the second degree as defined in [Penal Law § 215.50 (3)] by violating . . . a duly served order of protection . . . under . . . articles four, five, six [or] eight of the [F]amily [C]ourt [A]ct . . ., which requires the . . . defendant to stay away from the person . . . on whose behalf the order was issued, and where the defendant has been previously convicted of the crime of . . . criminal contempt in the . . . second degree for violating an order of protection . . . within the preceding five years" (Penal Law § 215.51 [c]). A person is guilty of criminal contempt in the second degree under Penal Law § 215.50 (3) when he or she "[i]intentional[ly] disobe[ys] or [is] resistan[t] to the lawful process or other mandate of a court." A person is guilty of aggravated family offense when he or she commits one of the statutorily enumerated "specified offenses" set forth in Penal Law § 240.75 (2) against a person in his or her same family or household "and, within the preceding five years, has also been convicted of at least one other specified offense" against a person in his or her family or household (People v Lapham, 172 AD3d 1634, 1636 [2019], lv denied 33 NY3d 1070 [2019]; see Penal Law § 240.75 [1], [2]; CPL 200.63). The specified offenses set forth in Penal Law § 240.75 (2) include criminal contempt in the second degree.
Defendant contends that the People did not prove that he acted with the requisite intent to violate the order of protection because he was intoxicated [*2]at the time of the violation. Evidence of intoxication "may be offered by the defendant whenever it is relevant to negative an element of the crime charged" (Penal Law § 15.25). "Whether an individual's level of intoxication negates the element of intent to commit a crime lies within the domain of the jury as the trier of fact" (People v Scott, 47 AD3d 1016, 1018 [2008], lv denied 10 NY3d 870 [2008] [internal quotation marks and citations omitted]; see People v Califano, 84 AD3d 1504, 1506 [2011], lv denied 17 NY3d 805 [2011]).
Defendant stipulated that he was convicted of criminal contempt in the second degree in May 2012. The record indicates that such conviction stemmed from his violation of an order of protection directing him to stay away from the victim. At trial, the People presented evidence that, in February 2017, the victim resided with defendant — her then-boyfriend — at an apartment in the City of Gloversville, Fulton County. The victim testified that on the evening of February 6, 2017, defendant was at the apartment drinking alcohol and "getting very intoxicated." Later that evening, defendant asked her to make him something to eat and, when the victim went to the kitchen to boil water, defendant "walked towards the stove and grabbed the hot water in his hand as if to . . . throw it at [her]." Explaining that she was "petrified when [defendant] did that," the victim turned the stove off, dumped the water down the drain and went to bed.
When the victim awoke the next morning, defendant was still at the apartment drinking vodka. The victim testified that, as the morning went on, she "was trying to plan how [she] was going to escape out of the house to get away from him" and ended up going to the City of Gloversville Police Department to make a report. Around noon, two police officers escorted the victim back to the residence, where they found defendant "passed out on the living room floor." Defendant was transported to the hospital and the victim proceeded to Family Court, where she obtained an order of protection.[FN1] The People entered the order of protection into evidence, which required defendant to, among other things, stay away from the victim and her home, and was to remain in effect until August 7, 2017. Notwithstanding these requirements, the victim explained that, on February 8, 2017, she awoke around 5:45 a.m. to the sound of banging on the door and defendant calling out to her to "open the door." In response, the victim called 911 and walked to the door, where she observed defendant wearing a hospital gown and flip flops. The police eventually arrived and arrested defendant.
The People presented evidence that defendant was served with the order of protection on February 8, 2017 at 4:45 a.m. while he was at the emergency room. The police officer who served the order testified that he went over the terms with defendant, who was "shock[ed]" by the order and did not appear intoxicated at the time. Similarly, a [*3]nurse who treated defendant at the emergency room confirmed that, although defendant had been given Benadryl, Haldol and Ativan at the hospital, he was awake and oriented by 4:30 a.m., and did not appear intoxicated upon being discharged. When police officers proceeded to the victim's residence in response to her 911 call, they encountered defendant, who averred that he was there to retrieve his belongings. The two responding officers — one of whom was specially trained to recognize signs of intoxication — testified that defendant did not appear intoxicated at that time, though one conceded that defendant did smell of alcohol.[FN2]
Although a different verdict would not have been unreasonable had the jury accepted defendant's theory that he was too intoxicated to form the intent necessary to sustain a conviction on the contempt charge, when "view[ing] the evidence in a neutral light and . . . weigh[ing] the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn [therefrom]," we conclude that the verdict is not against the weight of the evidence (People v Cason, 203 AD3d 1309, 1310 [2022] [internal quotation marks and citations omitted]). The proof established that defendant was served with an order of protection on the morning of February 8, 2017 that directed him to stay away from the victim — a member of his household as defined in CPL 530.11 — and to refrain from going to her residence. There was also testimony that defendant was aware of the order's terms. Nevertheless, he violated that order by proceeding to the victim's residence approximately an hour after being served. The record demonstrates that defendant was heavily intoxicated when taken to the hospital. He was monitored overnight, during which he "mostly slept," but was also noted to be "slurring his speech" at 1:37 a.m. There was also testimony from several sources that he no longer appeared intoxicated by the time he was served with the order and released from the hospital. The record shows that defendant signed the hospital discharge paperwork at 5:25 a.m. Around 20 minutes later he was at the victim's door. The jury was free to credit this testimony and conclude that defendant's level of intoxication did not negate the requisite intent to commit criminal contempt in the first degree (see People v Reibel, 181 AD3d 1268, 1270 [2020], lv denied 35 NY3d 1029 [2020]; People v Shortell, 173 AD3d 1364, 1366 [2019], lv denied 34 NY3d 937 [2019]). Based upon the foregoing, and given defendant's predicate conviction for a specified offense within the preceding five years, the verdict on the charges of criminal contempt in the first degree and aggravated family offense are not against the weight of the evidence (see Penal Law § 240.75; CPL 530.11 [1] [e]).
Defendant contends that the sentence is harsh and excessive and should be reduced in the interest of justice. He clarifies that it "is not . . . the prison term, [*4]which he has already served," that is harsh and excessive, but rather "the deportation consequences of his conviction." He seeks to have the convictions "reduced" to petty offenses to render him "eligible for an exception to the definition of crimes of moral turpitude[] that typically trigger deportation consequences." Although this Court has the authority, in the interest of justice, to reduce harsh and excessive sentences, defendant's claim — to the extent it actually seeks reduction of the sentence — is moot insofar as he has already served the sentence imposed and his maximum expiration date has passed (see People v Taylor, 194 AD3d 1264, 1266 [2021], lv denied 37 NY3d 975 [2021]; People v Pozzi, 117 AD3d 1325, 1325 [2014]). More fundamentally, defendant does not appear to be challenging the sentence itself but, rather, requesting that this Court exercise its interest of justice jurisdiction to change the verdict reached by the jury. We have no authority to do so (see CPL 450.30 [1]; cf. People v Cosme, 80 NY2d 790, 792 [1992]).
Clark, Aarons, Colangelo and McShan, JJ., concur.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: The victim did not pursue the Family Court matter.

Footnote 2: Defendant highlights certain discrepancies in one of the officer's testimony during a Huntley hearing and at trial regarding his observations of defendant as it pertained to the issue of intoxication. To the extent that defendant is attempting to raise a credibility issue with respect to this witness's testimony, we note that defense counsel extensively cross-examined this officer at trial and the discrepancies in his testimony were presented to the jury. In any event, the jury could independently assess the accuracy of the arresting officer's descriptions upon review of the body camera footage, which was entered into evidence at trial.