[Cite as *State v. Smith*, 2013-Ohio-5345.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                                       :

    Plaintiff-Appellee                         :          C.A. CASE NO.    25462

v.                                                  :          T.C. NO.    12CR1894

ISAIAH SMITH, JR.                                   :          (Criminal appeal from
                                                     Common Pleas Court)

    Defendant-Appellant                        :

                                                    :

. . . . . . . . . .

**O P I N I O N**

Rendered on the _____6th_____ day of _____December_____, 2013.

. . . . . . . . . .

ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

KATE L. BOWLING, Atty. Reg. No. 0084442, 111 W. First Street, Suite 518, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . .

DONOVAN, J.

{¶ 1}    Defendant-appellant Isaiah Smith, Jr., appeals his conviction and sentence

for one count of rape (by force or threat of force), in violation of R.C. 2907.02(A)(2), a felony of the first degree; one count of kidnapping (sexual activity), in violation of R.C. 2905.01(A)(4), a felony of the first degree; one count of attempted rape (by force), in violation of R.C. 2923.02(A), a felony of the second degree; and one count of assault (knowingly), in violation of R.C. 2903.13(A), a misdemeanor of the first degree. Smith filed a timely notice of appeal with this Court on November 9, 2012.

{¶ 2} On June 14, 2012, the victim in the instant case, D., was celebrating her birthday with friends. Between the hours of 3:00 and 7:00 p.m., D. testified that she drank approximately twenty-four ounces of Wild Irish Rose wine. At 7:00 p.m., D. testified that she stopped drinking and went to a gathering of "family and friends" where she smoked crack cocaine twice. D. further testified that she had been regularly using crack cocaine for approximately twenty-five years.

{¶ 3} After the family gathering, D. met some friends with whom she drove to the Dayton View area near Riverview Avenue in Dayton, Ohio. Around 11:00 p.m., D.'s friends dropped her off on Riverview Avenue and left her there. D. testified that she began walking west down Riverview Avenue towards Paul Lawrence Dunbar Street when a man, later identified as the defendant, Smith, approached her and began talking to her. D. testified that Smith asked her if she knew where he could find some crack cocaine. D. told Smith that she did, and she took him to the home of a nearby drug dealer she identified as J.C. in order to purchase crack cocaine. D. testified that Smith was also acquainted with J.C. and his girlfriend, Dreya. After Smith purchased crack cocaine from J.C., he asked D. if she would like to come back to his apartment to have a drink and smoke crack together.

D. agreed to accompany Smith after J.C.'s girlfriend informed her that the defendant was "a sweet guy." D. testified that her only intention in going with Smith was to "get high and drink," not to trade sexual favors for drugs.

{¶ 4} After they arrived at the Terrace View Apartments, D. followed Smith up to his fifth floor where his unit was located. Once inside his apartment, Smith gave D. a can of malt liquor and let her smoke some of the crack he had purchased. After D. took a "hit" from the crack pipe, Smith began to act in a violent and erratic manner. Smith informed D. that he was "tired of bitches like y'all walking up and down the street." Smith then snatched the crack pipe from D. and punched her in the face.

{¶ 5} Smith continued to punch D. in the head and face while she tried to get up and leave the apartment. D. testified that Smith told her, "You're my bitch now. We can do this all night. You ain't going nowhere." At that point, Smith ordered D. to remove her clothes. Fearing further harm, D. testified that she complied. Smith approached D. from behind and forced his penis into her anus. Smith then turned D. over, laid on top of her, and attempted to penetrate her vaginally. D. testified that she began feigning an asthma attack, causing Smith to get off of her. D. used this opportunity to get up and run out of the front door and pull the fire alarm. D. testified that she was completely naked.

{¶ 6} Once D. reached the first floor of the building, she began knocking on apartment doors and asking for help. Eventually, a woman in a first-floor apartment opened her door and gave D. a white sheet to cover herself. D. then walked into the foyer of the apartment building and laid down on a couch where she passed out at approximately 5:00 a.m.

{¶ 7}    Meanwhile, at approximately 5:10 a.m., Dayton Police Officers Joshua Campbell and Adam Sharp were dispatched to Terrace View Apartments on a suspicious circumstance complaint.   Upon entering the foyer of the building, Officer Campbell testified that he found D. lying on a couch just inside the front entrance.   Officer Campbell testified that D. was highly upset, shaking, crying, and unresponsive to his questions.   Officer Campbell further testified that the left side of D.'s face was red and swollen.   Paramedics arrived and took D. to Miami Valley Hospital where she was examined by nurses and found to have injuries consistent with being anally and vaginally raped.   The physical examination also revealed that D. had suffered severe bruising to her face and had been bitten on her back.

{¶ 8}    While she was at the hospital, D. advised the police that she had been sexually assaulted by a man living in apartment on the fifth floor of the Terrace View Apartments.   Dayton Police Officer Sean Humphrey returned to the apartment complex where Smith lived and knocked on the door to unit # 504.   No one answered.   Officer Humphrey spoke with the apartment manager and got a key to the unit, and opened the front door.   Officer Humphrey testified that Smith, who was inside the apartment, would not identify himself at first.   After some questioning, however, Smith admitted who he was. Smith was subsequently arrested and taken into custody.

{¶ 9}    On June 28, 2012, Smith was indicted for one count of rape (by force or threat of force), one count of kidnapping (sexual activity), one count of attempted rape (by force), and one count of felonious assault (serious harm).   After a jury trial held on September 25 and 26, 2012, Smith was found guilty of one count of rape (by force or threat of force), one count of kidnapping (sexual activity), and one count of attempted rape (by

force).   Smith was found not guilty of felonious assault (serious harm), but found guilty of the lesser included offense of misdemeanor assault.   After merging the count of forcible rape with the kidnapping count, the trial court sentenced Smith to an aggregate eleven years in prison.   The trial court also designated Smith a Tier III sex offender.

{¶ 10}   It is from this judgment that Smith now appeals.

{¶ 11}   Smith's first assignment of error is as follows:

{¶ 12}   "APPELLANT'S CONVICTION WAS ENTERED AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶ 13}   In his first assignment, Smith contends that his convictions for rape, kidnapping, attempted rape, and assault were against the manifest weight of the evidence because they were all dependent on the testimony of D.   Specifically, Smith argues that D.'s testimony lacked all credibility and shouldn't be considered for any purpose.

{¶ 14}   "'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.   The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *State v. McKnight*, 107 Ohio St.3d 101,112, 2005-Ohio-6046, 837 N.E.2d 315.

{¶ 15}   The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve.   *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967).   "Because the factfinder * * * has the opportunity to see and hear the

witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997).

{¶ 16} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict. *State v. Bradley*, 2d Dist. Champaign No. 97-CA-03, 1997 WL 691510 (Oct. 24, 1997).

{¶ 17} In the instant case, Smith asserts that D.'s testimony is rendered "void of credibility" by her admitted history of drug use, drug use on the day of the incident, lengthy criminal history, and conflicting details in her trial testimony. Smith argues that all that D.'s testimony establishes is that she was prostituting on the night of the incident, and that the only reason she went with Smith to his apartment was to trade drugs for sex.

{¶ 18} Upon review, we conclude that Smith's multiple convictions are not against the manifest weight of the evidence. The credibility of the witnesses and the weight to be given their testimony were matters for the court to resolve. The jury did not lose its way simply because it chose to believe the testimony of the victim, D., who testified at length regarding Smith punching her in the face and head, forcing her to remain in his apartment after she tired to leave, anally raping her, and attempting to vaginally rape her. D. admitted during her testimony that she had been using crack cocaine for approximately twenty-five

years. D. testified that she had even smoked crack twice on the day that the incident occurred. D. also testified that she has been convicted of several felonies. Significantly, when she was cross-examined by defense counsel, D. specifically denied that she went with Smith to his apartment to trade sex for drugs. D. testified that she only went to Smith's apartment to "get high and drink." Defense counsel had ample opportunity to cross-examine D. and undermine her story. Finally, Cindy Jennings, the trauma nurse who examined D. after she was admitted to Miami Valley Hospital testified that her injuries were consistent with an individual who had been forcibly raped. Having reviewed the entire record, we cannot clearly find that the evidence weighs heavily against a conviction, or that a manifest miscarriage of justice has occurred.

{¶ 19} Smith's first assignment of error is overruled.

{¶ 20} Smith second assignment of error is as follows:

{¶ 21} "THE STATE COMMITTED REVERSIBLE MISCONDUCT."

{¶ 22} In his second assignment, Smith argues that the prosecutor made several remarks during the course of the trial that were improper and prejudicial. Specifically, Smith asserts that the prosecutor made certain remarks during his opening and closing statements that deprived him of the right to a fair trial.

{¶ 23} Generally, prosecutors are entitled to considerable latitude in opening and closing arguments. *Maggio v. Cleveland*, 151 Ohio St. 136, 140, 84 N.E.2d 912 (1949); *State v. Ballew,* 76 Ohio St.3d 244, 255, 667 N.E.2d 369 (1996). A prosecutor may freely comment on what the evidence has shown and what reasonable inferences the prosecutor believes may be drawn therefrom. *State v. Lott*, 51 Ohio St.3d 160, 165, 555 N.E.2d 293

(1990). Indeed, in our adversarial system, prosecutors are not only permitted but also encouraged to argue fervently for conviction. *State v. Stephens*, 24 Ohio St.2d 76, 82, 263 N.E.2d 773 (1970). It is improper, however, for an attorney to express his personal belief or opinion as to the credibility of a witness or as to the guilt of the accused. *State v. Smith*, 14 Ohio St.3d 13, 13-14, 470 N.E.2d 883 (1984). The prosecution must also avoid insinuations and assertions which are calculated to mislead the jury. *Id*. at 15.

{¶ 24} The test for prosecutorial misconduct is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused. *State v. Bey,* 85 Ohio St.3d 487, 494, 709 N.E.2d 484 (1999); *Smith*, 14 Ohio St.3d at 14. The focus of that inquiry is on the fairness of the trial, not the culpability of the prosecutor. *Bey*, 85 Ohio St.3d at 495. In determining whether the prosecutor's remarks were prejudicial, the state's argument must be viewed in its entirety. *Ballew*, 76 Ohio St.3d at 255.

{¶ 25} Defense counsel did not object to any of the instances of alleged prosecutorial misconduct during trial. Thus, we must review this entire assignment under a plain error analysis. Crim. R. 52(B) allows a reviewing court to consider errors committed at trial, upon which appellant did not object, only if such errors affected the substantial rights of the appellant. A reviewing court should use the utmost caution in taking notice of plain error and should do so only if it is clear that, but for the error, the result in the trial court would have been different. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph 2 of syllabus. Notice of plain error should be taken only in exceptional circumstances and only to prevent a manifest miscarriage of justice. *Id*., paragraph 3 of syllabus.

**{¶ 26}** Initially, Smith argues that the prosecutor committed misconduct when he made the following statement to the jury during opening statement:

At the conclusion of this case, once you've heard all of the evidence, once all of the testimony has been presented to you, there will be only but one choice for you to make, and that choice will be clear. That choice will be to find this Defendant guilty and hold him accountable and responsible for what he did to [D.] on June 15, 2012.

**{¶ 27}** Upon review, we conclude that the prosecutor's remarks during his opening statement were not improper, but were simply a summary of what he expected the evidence to establish at the end of the trial. The jury was instructed numerous times throughout the trial that they alone were the trier of fact who would ultimately determine Smith's guilt or innocence. The prosecutor's remarks were not a mandate to the jury that they were required to find Smith guilty. Moreover, there is nothing in the record to suggest that the result of the trial would have been any different had the prosecutor not made the statement in question.

**{¶ 28}** Smith next takes issue with the following remarks made by the prosecutor during his closing argument:

The true measure of a society is to look at the way that the society treats its weakest, most vulnerable members. I don't think there is anyone who has sat through this trial that can deny that [D.] is one of society's weakest and most vulnerable members.

\*\*\*

Don't reward Isaiah Smith, Jr. for selecting such a weak and pitiful victim. Don't reward Isaiah Smith, Jr. for selecting a victim that we may find so morally reprehensible as to want to pretend that people like that don't even exist. But there's no denying that [D.] exists, just as there's no denying the consistency, the corroborating evidence of her story.

\*\*\*

[Smith] was talking to her about using crack cocaine. So she agreed to go with him to the dealer's house. A poor choice, certainly. A choice that any of us would want a friend or family member to make, certainly not. But that's the choice that [D.] made. She further agreed to go back to the Defendant's apartment on the Terrace View apartment building \*\*\*. Again, admittedly, a poor choice.

\*\*\*

Look at the way in which this Defendant treated one of our most vulnerable people. No one is asking you to like her. No one is asking you to be [D.'s] friend. No one is asking you to allow [her] into your home. The only thing that's being asked of you is to apply the law to the facts in this case.

{¶ 29}  Smith argues that when all of these statements are viewed cumulatively, they improperly establish the personal opinion of the prosecutor regarding the societal value of the victim. Smith further asserts that the prosecutor's remarks "*placed himself on a moral high ground, and he took the jury up to the summit with him.*"

{¶ 30} Initially, we note that Smith's defense consisted of trying to convince the jury that the only reason D. accompanied him to his apartment was to trade sex for drugs. Defense counsel attempted to accomplish this by repeatedly reiterating throughout the trial that D. was a long-term drug abuser with an extensive history of criminal behavior. It was, therefore, not improper for the prosecutor to point out D.'s perceived vulnerability, especially when the prosecutor linked his closing argument to the evidence presented at trial. In *State v. Simes,* 2d Dist. Montgomery No. 10985, 1989 WL 35889 (April 11, 1989), we found that it was fair for the prosecutor, in his closing, to comment that the victim of a robbery in the parking lot of a grocery store was pregnant and particularly vulnerable to the actions of the defendant. Thus, in the instant case, it was not improper for the prosecutor to discuss in his closing argument D.'s vulnerability to the actions of Smith in light of her lifelong problems with drug addiction. Moreover, Smith has failed to establish that a manifest miscarriage of justice occurred as a result of the prosecutor's closing remarks regarding D.'s vulnerability.

{¶ 31} Finally, Smith maintains that the prosecutor improperly commented upon his failure to testify at trial when he made the following statement at the end of his initial closing argument:

The facts of this case clearly show, on June 15, 2012, [D.] was held against her will, and she was beaten, and she was raped. *You haven't heard a single witness that's told you otherwise. Think about that for a moment. Not a single witness has taken the stand in this case and told you anything different.*

{¶ 32} It is well-settled that a prosecutor may not comment on a defendant's failure

to testify. *State v. Twyford*, 94 Ohio St.3d 340, 355, 2002-Ohio-894, 763 N.E.2d 122. In determining whether a defendant's Fifth Amendment rights were violated, we consider "whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *Id.* Significantly, isolated remarks by a prosecutor should not be taken out of context and given their most damaging interpretation. *Id.* at 356, 763 N.E.2d 122.

{¶ 33} In support of its argument that the prosecutor's statement did not denigrate Smith for failing to testify, the State cites two cases, to wit: *State v. Gapen*, 104 Ohio St.3d 358, 2004-Ohio-6548, 819 N.E.2d 1047; and *State v. Webb*, 70 Ohio St.3d 325, 638 N.E.2d 1023 (1994). These cases stand for the proposition that when a prosecutor's remark is placed in the context of his overall argument, both in the first instance and in rebuttal, the remark was clearly not "manifestly intended" to be a negative comment on a defendant's decision to not testify during his or her trial. *Id.*

{¶ 34} In *Gapen*, however, the Ohio Supreme Court found that the statements made by the prosecutor in which he stated that the defendant was the "best witness for what he did" referred to the defendant's confession made to police and not his failure to testify. Moreover, in *Webb*, during his closing argument, the prosecutor stated the defendant "killed his son" and "tried to kill every single person in the house." At that point, the defendant interrupted the prosecutor, saying "You're wrong," to which the prosecutor replied "He spoke." The defendant claimed that the prosecutor's statement "He spoke" was an implied comment on the fact the defendant had not testified at trial. The Ohio Supreme Court found that a jury would not naturally or necessarily interpret the words "He spoke" as a comment

on the defendant's failure to testify. Accordingly, these cases are distinguishable and do not support the State's argument that the prosecutor's remark in the instant case was not directed at Smith's failure to testify.

{¶ 35} Upon review, we find that the prosecutor's statement was inferentially directed at Smith's failure to testify. The prosecutor's statement was made at the end of his initial closing argument, and not on rebuttal. The statement clearly insinuates that Smith offered no testimony which contradicted the State's position that Smith beat, kidnapped, and raped D. Thus, the prosecutor's statement could have been understood by the jury to be a comment on Smith's failure to testify and defend himself against D.'s accusations. After all, whether consensual sex or forcible rape occurred was known only to D. and Smith.

{¶ 36} Nevertheless, even assuming that the prosecutor's remarks were improper, such comments neither materially prejudiced nor denied Smith a fair trial. Furthermore, the trial court instructed the jury not to consider Smith's decision not to testify for any purpose, and "[a] jury is presumed to follow the instructions given to it by the trial judge." *Id*., citing *State v. Loza*, 71 Ohio St.3d 61, 75, 641, N.E.2d 1082, 1100 (1994). Accordingly, while we certainly do not condone such argument, the prosecutor's isolated statement during closing does not require reversal because Smith was not denied a fair trial. Finally, in light of defense counsel's failure to object to any of the alleged instances of prosecutorial misconduct, Smith has failed to demonstrate plain error.

{¶ 37} Smith's second assignment of error is overruled.

{¶ 38} All of Smith's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

FAIN, P.J. and WELBAUM, J., concur.

Copies mailed to:

Andrew T. French
Kate L. Bowling
Hon. Michael W. Krumholtz