[Cite as *State v. Sanders*, 2014-Ohio-332.]

### IN THE COURT OF APPEALS OF OHIO
### SECOND APPELLATE DISTRICT
### MONTGOMERY   COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 25815 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 13-CRB-543 |
| v. | : | |
| | : | |
| BRIAN L. SANDERS | : | (Criminal Appeal from Dayton |
| | : |  Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

· · · · · · · · · · ·

### O P I N I O N

Rendered on the 31st day of January, 2014.

· · · · · · · · · · ·

JOHN J. DANISH, Atty. Reg. #0046639, and STEPHANIE L. COOK, Atty. Reg. #0067101, by TROY B. DANIELS, Atty. Reg. #0084957, Dayton Municipal Prosecutor's Office, 335 West Third Street, Room 372, Dayton, Ohio 45402
        Attorney for Plaintiff-Appellee

GEORGE A. KATCHMER, Atty. Reg. #0005031, 1886 Brock Road N.E., Bloomingburg, Ohio 43106
        Attorney for Defendant-Appellant

· · · · · · · · · · · · ·

HALL, J.,

{¶ 1}     Brian L. Sanders appeals from his conviction and sentence on one count of domestic violence, a first-degree misdemeanor.

{¶ 2}     In two related assignments of error, Sanders challenges the legal sufficiency

and manifest weight of the evidence to sustain his conviction.

{¶ 3} The State's primary witness at trial was Nichole Wiley, the victim. Wiley testified that she had been living with Sanders for approximately six months and that they owned a house together. According to Wiley, the incident in question occurred on the morning of January 24, 2013. Wiley testified that she and Sanders began arguing about giving money to people over the internet. After viewing a television program on the topic, Wiley followed Sanders to an upstairs bedroom where the argument escalated. Sanders warned Wiley not to give money to an ex-boyfriend or to see the ex-boyfriend again. Wiley testified that Sanders then began striking her face above her eye with a closed fist. He also grabbed her neck and shook it, grabbed her arms and squeezed them, and pushed her into a dresser. (Tr. at 8-9). Wiley testified that each of these acts inflicted pain on her. (*Id*. at 9). After the incident, she observed redness on her head and arms. She also saw bruising on her arms. Wiley sought medical treatment because of pain in her neck due to the incident. She later was diagnosed with a slipped disc and a sprained neck. Wiley testified that these conditions did not exist before Sanders grabbed her neck and shook it. (*Id*. at 10-11).

{¶ 4} The State also presented testimony from police sergeant Shannon Mason, who took photographs of Wiley. Photographs admitted into evidence at trial depict substantial bruising on Wiley's arms. The State's final witness was police officer Chris Fogle, who responded to the domestic-violence call. Fogle testified that Wiley was upset but not crying. He examined her right arm and saw some redness and light bruising starting. (*Id*. at 24). Fogle did not notice any marks or discoloration on Wiley's face or neck. (*Id*. at 25). He explained, however, that bruising often does not show up immediately. (*Id*. at 26).

{¶ 5} Sanders testified in his own defense and denied most of Wiley's allegations.

According to Sanders, Wiley followed him upstairs and began acting aggressively. He testified that she was getting in his face, yelling, pointing her finger, and "acting crazy." (*Id*. at 30). Sanders admitted pushing Wiley away to get her out of his "personal space." (*Id*.). Wiley came toward him again, and he pushed her away a second time. (*Id*. at 31). When Wiley approached his face a third time, he "grabbed her arms like stop it." (*Id*.). He then told her to leave the room "before somebody gets hurt." (*Id*.). According to Sanders, Wiley responded by leaving the room. (*Id*. at 32). He denied punching her or grabbing her neck. He explained that his purpose in grabbing her arms was to prevent her from hitting him or poking him in the eye. (*Id*.). On cross examination, Sanders admitted causing a bruise on Wiley's arm. (*Id*. at 35-36). He explained that he grabbed her arms "with force" to stop her, not to hurt her. (*Id*. at 36).

{¶ 6}   Based on the evidence presented, the trial court found Sanders guilty of domestic violence and sentenced him accordingly.[1] This appeal followed.

{¶ 7}   As set forth above, Sanders challenges the legal sufficiency and manifest weight of the evidence to support his conviction. In support, he relies on his testimony that he was trying to protect himself from Wiley's aggression. He claims "slight bruising"on Wiley's arms is consistent with his version of events. He also stresses the absence of photographic evidence to support Wiley's claim that he punched her.

{¶ 8}   When a defendant challenges the sufficiency of the evidence, he is arguing that the State presented inadequate evidence on an element of the offense to sustain the verdict as a matter of law. *State v. Hawn*, 138 Ohio App.3d 449, 471, 741 N.E.2d 594 (2d Dist.2000). "An

---

[1] The trial court also found Sanders guilty of misdemeanor assault. It merged that allied offense into the domestic-violence conviction for sentencing purposes.

appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 9} Our analysis is different when reviewing a manifest-weight argument. When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 10} With the foregoing standards in mind, we conclude that Sanders' conviction is supported by legally sufficient evidence. Wiley's testimony, if believed, is sufficient to support a finding that Sanders knowingly caused physical harm to a household member in violation of R.C. 2919.25(A). Wiley testified that she lived with Sanders and that he struck her in the face, grabbed her neck and shook it, grabbed her arms and squeezed them, and pushed her into a dresser. This

testimony alone constitutes legally sufficient evidence to sustain Sanders' conviction.

{¶ 11} The conviction also is not against the weight of the evidence. "The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve." *State v. Smith*, 2d Dist. Montgomery No. 25462, 2013-Ohio-5345, ¶15. "This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict." *Id.* at ¶ 16. Here the trial court credited Wiley's testimony, finding that Sanders "grabbed her, punched her in the face and head and * * * grabbed her neck." (Tr. at 42). The trial court also found that nothing Wiley did justified Sanders' actions. (*Id*. at 43). As the trier of fact, the trial court had the discretion to make these findings. We note too that Sanders himself admitted grabbing Wiley's arms, and photographs reveal significant bruising on them. The absence of significant visible injuries to Wiley's head or neck did not obligate the trial court to reject her testimony about being punched and shaken. Officer Fogle explained that bruising often does not show up until later. Moreover, Wiley's neck sprain and slipped disc, by their nature, might not result in any outward sign of injury. Having reviewed the record, we cannot say this is an exceptional case in which the evidence weighs heavily against Sanders' conviction.

{¶ 12} Sanders' two assignments of error are overruled, and the trial court's judgment is affirmed.

. . . . . . . . . . . . .

DONOVAN and WELBAUM, JJ., concur.

Copies mailed to:

John J. Danish
Stephanie L. Cook
Troy B. Daniels
George A. Katchmer
Hon. Carl Sims Henderson