[Cite as *State v. Boscarino*, 2014-Ohio-1858.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY   COUNTY

STATE OF OHIO                                    :
                                                 :        Appellate Case No. 25580
        Plaintiff-Appellee                       :
                                                 :        Trial Court Case No. 2011-CR-2802
v.                                               :
                                                 :
NIKOLAOS BOSCARINO                               :        (Criminal Appeal from
                                                 :         Common Pleas Court)
        Defendant-Appellant                      :
                                                 :

. . . . . . . . . . .

O P I N I O N

Rendered on the 2nd day of May, 2014.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by CARLEY J. INGRAM, Atty. Reg. #0020084, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

ROBERT A. BRENNER, Atty. Reg. #0067714, 120 West Second Street, Suite 706, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.,

{¶ 1}    Nikolaos Boscarino appeals from his conviction and sentence on charges of

felonious assault on a peace officer, resisting arrest, misdemeanor assault, and a

repeat-violent-offender specification.

{¶ 2}    Boscarino advances three assignments of error. The first two challenge the legal sufficiency and manifest weight of the evidence to support his felonious-assault conviction. The third alleges ineffective assistance of counsel for not objecting at trial to evidence about him being a mixed-martial-arts fighter.

{¶ 3}    The present appeal stems from a fight that occurred outside Taggart's Pub on Patterson Avenue. The State's evidence established that Dayton police officer Donnie Smith arrived at the pub in the early morning hours of August 12, 2011 in response to a call about attempted theft of patio furniture. Smith was standing outside the pub speaking with owner Michael Taggart, bouncer Brian Rinderle, and others when a white Cadillac pulled up heading the wrong way on Broadmoor Avenue. The car stopped briefly and three men got out. The men later were identified as Boscarino and two of his friends, Anthony Ballard and Mo Rashad. Upon seeing the three men, Taggart advised Rinderle that he did not want them in the pub because it was near closing time, they were being loud, and they appeared intoxicated. Smith heard Taggart and indicated that he would go speak to the men.

{¶ 4}    As Boscarino's friends neared the pub, Boscarino stepped behind some hedges and began urinating on or near the sidewalk. Smith approached wearing his uniform and identified himself as a police officer. He then told Boscarino that he was going to issue a citation for urinating in public. When Smith attempted to escort Boscarino to his police cruiser, Boscarino adopted a fighting stance. Smith stepped back, pulled out his taser, and warned Boscarino to cooperate. Boscarino responded by putting his hands down and appearing to relax. As Smith was putting his taser away, however, Boscarino punched him twice in the face. The blows knocked Smith to the ground. Eyewitness Nicholas Folan then saw Boscarino lean over

and deliver a "vicious" blow to Smith's head as he lay on the concrete. Smith appeared to have been knocked unconscious.

{¶ 5} Rinderle saw what happened and ran to help Smith. Rinderle grabbed Boscarino in a bear hug, and they fell to the ground. As Rinderle and Boscarino struggled, Smith re-entered the fray. He fired his taser at Boscarino, but it had no noticeable effect. Pub patrons Folan and Brian Wessling, an off-duty police officer, attempted to help control Boscarino, who would not obey commands. As the altercation continued, Smith made an officer-in-distress call on his radio. Soon thereafter, additional officers arrived and subdued Boscarino. At that time, Smith was laying down. He appeared dazed and semi-conscious. Upon arresting Boscarino, police discovered that he was a licensed mixed-martial-arts fighter.

{¶ 6} Smith was transported by ambulance to the hospital. He was released after being treated for cuts, scrapes, and a hematoma on the back of his head. Smith followed up with his family doctor, Martin Fujimura, later that day. He complained of a headache. He also described seeing "floaters" in his vision. Fujimura noticed an abrasion and a knot on the back of Smith's head. He diagnosed a concussion as a result of the fight. He recommended a visit to an eye doctor for the floaters. Fujimura opined at trial that Smith's symptoms resulted from the assault by Boscarino. He did not attribute the symptoms to a brain tumor for which Smith previously had received treatment. Fujimura referred Smith to Raymond Poelstra, a neurosurgeon, to verify his opinion. Fujimura also saw Smith for several follow-up visits. On these occasions, Smith reported having some cognitive problems and stuttering at times.

{¶ 7} Poelstra examined Smith in October 2011, approximately two months after the incident with Boscarino. At that time, Smith complained of continued headaches. Although

Smith had a history of chronic headaches, he reported that they had worsened since Boscarino's assault. Smith also reported experiencing difficulty concentrating, slurred speech, stuttering when excited, and short-term memory loss. Poelstra noted that Smith had a history of several prior concussions and treatment for a meningioma, a non-malignant brain tumor. Poelstra ruled out the tumor, or Smith's treatment for it, as a source of his symptoms. Poelstra diagnosed him as suffering from post-concussive syndrome and attributed his symptoms to the concussion he sustained when Boscarino assaulted him. In reaching this conclusion, Poelstra noted that each successive concussion has an "additive" effect on the harm caused by prior concussions. Therefore, a patient's symptoms may increase in severity with each successive concussion. Poelstra found that to be true in Smith's case.

{¶ 8} Smith also was examined by chiropractor Charles Lee approximately one month after the incident with Boscarino. During his examination, Lee noticed that Smith repeated himself several times, which suggested short-term memory loss. Smith complained of neck and back pain as well as headaches. Lee diagnosed lumbar, cervical, and thoracic sprains and strains. He concluded that these injuries were caused by the altercation with Boscarino. He characterized the injuries as temporary but substantial.

{¶ 9} In his defense, Boscarino called neurologist Alan Jacobs to testify. Jacobs did not examine Smith. He based his testimony on a review of medical records. Jacobs noted the absence of any reported swelling or broken bones in Smith's face after the altercation. He also noted, however, that some swelling had occurred on the back of Smith's head. Jacobs opined that Smith had suffered a mild concussion as a result of trauma to the back of his head. He classified the concussion as being "level one," the lowest level. He reached this conclusion based on what he

perceived as a lack of evidence regarding memory loss. He believed Smith was unlikely to have experienced any serious or lasting cognitive impairment as a result of the concussion, which he doubted had resulted in a loss of consciousness. Jacobs also did not attribute Smith's worsening headaches to the altercation with Boscarino. Jacobs attributed them to Smith's prior concussions, his brain tumor and the accompanying treatment, and his history of chronic migraines.

{¶ 10}   After hearing the evidence, which included testimony from additional witnesses, a jury convicted Boscarino of the charges set forth above. The trial court imposed an aggregate seven-year prison sentence. This appeal followed.

{¶ 11}   In his first two assignments of error, Boscarino challenges the legal sufficiency and manifest weight of the evidence to support his conviction for felonious assault. Boscarino's substantive argument is the same for both assignments of error. He contends the State failed to prove that he knowingly caused serious physical harm to Smith. More specifically, Boscarino stresses Smith's prior concussions and uncertainty about whether he lost consciousness. Boscarino also relies on Jacobs' testimony attributing Smith's symptoms to things other than the assault. Finally, Boscarino contends the State failed to prove how Smith injured the back of his head in the first place.

{¶ 12}   When a defendant challenges the sufficiency of the evidence, he is arguing that the State presented inadequate evidence on an element of the offense to sustain the verdict as a matter of law. *State v. Hawn*, 138 Ohio App.3d 449, 471, 741 N.E.2d 594 (2d Dist.2000). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.

The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 13} Our analysis is different when reviewing a manifest-weight argument. When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 14} With the foregoing standards in mind, we conclude that Boscarino's felonious-assault conviction is supported by legally sufficient evidence. To obtain a conviction under R.C. 2903.11(A)(1), the State was required to prove that Boscarino knowingly caused serious physical harm to Smith, who was performing his official duties as a peace officer. The State's evidence, if believed, is sufficient to prove these elements. Pursuant to R.C. 2901.22(B), "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result[.]" Consistent with R.C. 2901.01(A)(5), the trial court gave the following jury instruction regarding the meaning of "serious physical harm":

> Serious physical harm to persons means any of the following: a) any

physical harm that involves some permanent incapacity, whether partial or total or that involves some temporary substantial incapacity. Temporary unconsciousness constitutes a temporary substantial incapacity and therefore serious physical harm[;] b) any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain; and c) any physical harm that carries a substantial risk of death.

(Tr. Vol. VI at 983).[1]

{¶ 15}  This court has recognized that identifying serious physical harm is not an "exact science" because the definition includes terms such as "substantial," "temporary," "acute," and "prolonged." *State v. Fields*, 2d Dist. Montgomery No. 25461, 2013-Ohio-3031, ¶ 18. Under certain circumstances, a bruise may constitute serious physical harm. Moreover, a jury reasonably may infer serious physical harm where a victim's injuries are serious enough to cause him to seek medical treatment. *Id.*

{¶ 16}  The evidence here supports a finding that Boscarino knowingly caused serious physical harm to Smith. Although Smith was unsure whether Boscarino knocked him out, the record contains testimony from which the jury reasonably could have inferred that Smith was rendered unconscious as a result of Boscarino punching him. Rinderle testified that Smith "was out" after Boscarino hit him. (Tr. Vol. III at 368). Folan testified that Smith "went straight down to the ground * * * [l]ike it knocked him out that fast." (*Id*. at 383).  Police officer John Howard testified that he arrived at the scene and saw Smith on his back. Smith's "eyes were open but he

---

[1] The trial court's instruction that temporary unconsciousness constitutes serious physical harm is not specified in R.C. 2901.01(A)(5). But the instruction is consistent with this court's case law. *See, e.g.*, *State v. Booker*, 2d Dist. Montgomery No. 22990, 2009-Ohio-1039, ¶ 16 ("Temporary unconsciousness constitutes a temporary substantial incapacity, and therefore serious physical harm.").

was not moving." (Tr. Vol. IV at 618). According to Howard, Smith "did not appear to be conscious in the way in which he could move or defend himself. He was not coherent. He wasn't moving at all." (*Id.*). Police officer Curry Mire testified that Smith's eyes were "rolled back into his head." (*Id.* at 655). Mire stated that Smith "was not responding to any questions." (*Id.*). At one point, Smith appeared to be "going in and out of consciousness[.]" (*Id.* at 668). Police officer James Hardin testified that he shook Smith but got no response. It appeared to him that Smith was unconscious. (*Id.* at 697).

{¶ 17}   In addition to a loss of consciousness, the record contains evidence that Smith suffered a concussion and began experiencing physical problems as a result of being assaulted by Boscarino. As set forth above, his symptoms include worsened headaches, vision problems, difficulty concentrating, slurred speech, stuttering, and short-term memory loss. Smith presented expert testimony from which the jury reasonably could have attributed these symptoms to the blows inflicted by Boscarino and could have found serious physical harm based on them. Viewing the evidence in a light most favorable to the prosecution, the State presented legally sufficient evidence to support the jury's guilty verdict on the felonious-assault charge.

{¶ 18}   The felonious-assault conviction also is not against the weight of the evidence. "The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve." *State v. Smith*, 2d Dist. Montgomery No. 25462, 2013-Ohio-5345, ¶ 15. "This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict." *Id.* at ¶ 16. Here the jury reasonably could have believed the State's evidence that Boscarino knocked Smith unconscious and caused the physical problems he has experienced since the

altercation. Although Boscarino argued that Smith was not unconscious and sought to attribute Smith's symptoms to prior concussions and his brain tumor, the jury had the discretion to credit the State's evidence. Having reviewed the record, we cannot say this is an exceptional case in which the evidence weighs heavily against Boscarino's conviction. The first two assignments of error are overruled.

{¶ 19} In his third assignment of error, Boscarino alleges ineffective assistance of counsel based on his attorney's failure to object to evidence about him being a mixed-martial-arts fighter. Although defense counsel raised the issue in a failed pretrial motion in limine, counsel did not renew the objection at trial when the State presented evidence that Boscarino was a licensed mixed-martial-arts fighter. (*See*, *e.g.*, Tr. Vol. IV at 718-719).

{¶ 20} To prevail on his ineffective-assistance claim, Boscarino must show that his attorney's performance was deficient and that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Prejudice exists where "there is a reasonable probability that, but for counsel's deficient performance, the outcome would have been different." *Id.* at 694. On the record before us, we see no ineffective assistance of counsel.

{¶ 21} In denying Boscarino's motion in limine, the trial court found that evidence about his status as a licensed mixed-martial-arts fighter was highly relevant and that its probative value was not outweighed by the danger of unfair prejudice. (Doc. #93). A trial court enjoys considerable discretion when balancing the probative value of evidence against the danger of unfair prejudice, and we will not disturb its determination absent an abuse of discretion. *State v. Thompson*, 2d Dist. Montgomery No. 22984, 2010-Ohio-1680, ¶ 151. We see no abuse of

discretion in the trial court's pretrial ruling.

{¶ 22}  Boscarino's status as a licensed mixed-martial-arts fighter was relevant to his awareness that his punches could inflict serious physical harm. That issue was material because Boscarino was charged with felonious assault, which required proof that he knowingly caused serious physical harm to Smith. *Cf. Guam v. Castro*, Guam S.Ct. No. CRA12-027, 2013-Guam-20, 2013 WL 5891578, ¶ 32 (Oct. 25, 2013) ("Evidence of Castro's mixed martial arts participation and expertise was relevant to prove the awareness component of recklessness because it encompasses his particular knowledge and experience. * * * One can infer that Castro was aware that his punch to Dunham's face could cause a substantial risk of bodily injury or serious bodily injury[.]"); *State v. Thompson*, Wash. App. No. 64631-1-I, 2010 WL 3620240, *5 (Sept. 20, 2010) ("Thompson next contends that the trial court erred by finding evidence of his prior cage fighting experience more probative than prejudicial. Thompson is incorrect. * * * [T]he evidence tends to establish that his use of force was reckless, as he was likely aware of the amount of force necessary to subdue a person."); *People v. Scott*, 47 A.D.3d 1016, 1020-21, 849 N.Y.S.2d 335, 339-40 (2008) ("We also are unpersuaded by defendant's claim that County Court committed reversible error in admitting his certified professional boxing records into evidence and allowing the People to question him about being a boxer. County Court found these records, which included 19 wins by knockout, relevant to whether defendant possessed the ability to kill a person with his fists, his awareness of such lethal capacity and the intent inferable from repeatedly punching the 59-year-old victim."). The trial court also reasonably concluded that the probative value of Boscarino's status as a mixed-martial-arts fighter was not outweighed by the danger of unfair prejudice.

**{¶ 23}** Having found no abuse of discretion in the trial court's ruling on the motion in limine, we cannot find ineffective assistance in defense counsel's failure to raise the issue through an objection at trial. It is axiomatic that failure to object to admissible evidence does not constitute deficient performance. *State v. Kelley*, 2d Dist. Montgomery No. 13426, 1993 WL 544936, *8 (Dec. 22, 1993) (recognizing that "failure to object to admissible evidence does not violate any of defense counsel's essential duties to his or her client"). Because the mixed-martial-arts evidence was admissible, defense counsel had no obligation to object at trial. Boscarino's third assignment of error is overruled.

**{¶ 24}** The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

FAIN, and DONOVAN, JJ., concur.

Copies mailed to:

Mathias H. Heck
Carley J. Ingram
Robert A. Brenner
Hon. Steven K. Dankof